UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:20cv60826

**ANTHONY EWELL**,
    Plaintiff,

v.                                              [JURY DEMAND]

**CITY OF FORT LAUDERDALE**, a
political subdivision of the State of Florida,
**PAUL ALEXANDER**,
sued in his individual capacity,
    Defendant.

## COMPLAINT

    Plaintiff, ANTHONY EWELL, by and through counsel, hereby files his complaint and alleges:

## PARTIES

1. Plaintiff ANTHONY EWELL is a resident of the State of Florida.

2. Defendant CITY OF FORT LAUDERDALE is a municipal entity organized pursuant to the laws of Florida.

3. Defendant PAUL ALEXANDER is an employee of the City of Fort Lauderdale. Alexander is sued in his individual capacity.

4. Defendants acted under color of statute, ordinance, regulation, custom, or usage, of Fort Lauderdale, Broward County and/or the State of Florida.

## JURISDICTION & VENUE

5. This action is for legal and equitable relief brought pursuant to 42 USC § 1983 and 1988 regarding the violation of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution. Plaintiff's closely related state law claims are within this Court's jurisdiction pursuant to 28 USC § 1367.

6. Venue is proper because a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of Florida.



600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

Page | 1

7. All condition precedents have been satisfied including but not limited to those set out in Fla. Stat. § 768.28.

## STATEMENT OF FACTS

8. On or about October 26, 2018, Ewell met up with a longtime friend, a former Secret Service agent, at a local establishment called "Capones".

9. Shortly after his friend left the venue, Ewell departed the establishment at around 12:15 AM. As he was exiting, Ewell was struck in the head by a foreign object. An unknown City of Fort Lauderdale police officer was directly in front of Ewell when he was struck. Ewell asked the officer if he had seen what just transpired, the officer was unbothered by the assault and did not say anything.

10. Ewell then called 911 to report the assault and requested EMT for assistance.

11. After this call, Ewell then began to explain to the unknown officer that he was hit in the head while exiting Capones and he called 911 for assistance. He further explained to the unknown officer that the 911 operator told him to wait at the scene for paramedics to arrive.

12. During this entire incident, Ewell remained on the public sidewalk.

13. Approximately 20 minutes lapsed, Ewell seeing that the paramedics did not arrive, he called 911 again to gauge how much time he needed to wait for medical assistance.

14. After the second call, Ewell decided to take photos and videos to document the unknown officers' lack of assistance.

15. Approximately 30 minutes after his second call, Ewell noticed Paul Alexander, City of Fort Lauderdale, inside of a squad car. Despite being on the scene for the entire incident, Alexander ignored the repeated dispatches that directed him to investigate Ewell's assault.

16. The unknown officer then spoke to Alexander while he was in his patrol vehicle. After the discussion, Alexander and the unknown officer began to walk towards Ewell in a threatening manner.

17. After it became evident that none of the law enforcement officers were going to help him and that he would receive no medical assistance from paramedics, Ewell decided to leave the area and go home. After turning to leave, Ewell was suddenly tackled onto the concrete sidewalk by Alexander. The officers picked him up off the ground and placed him in custody.

18. As a result of this gratuitous force, Ewell's lips was busted, his front tooth was knocked halfway out of his gums, his ankle was in severe pain, and he was covered in blood. Alexander placed Ewell in custodial arrest and placed him into his patrol vehicle. While inside the police car, he observed the officers communicating with each other on how Alexander was going to fabricate probable cause to substantiate the false arrest.

19. Upon arriving to the police station, medical personnel forced the officers to take Ewell to the hospital after noticing the condition Ewell was in. After arriving to the hospital, Ewell was treated and given an X-ray of his ankle, which confirmed a fracture.

20. While waiting inside of his hospital room, Ewell asked Alexander why he had been treated in such a manner while he was waiting for the paramedics. Alexander told him that he had gotten the 911 calls, but he did not acknowledge or approach Ewell because Ewell looked fine from where he was sitting.

21. Alexander charged Ewell with disorderly conduct, resisting an officer without violence, and trespass. Ewell spent approximately one day in jail. Ewell was then released on a $100 bond.

22. On June 5, 2019, the criminal matter was tried in state court. At trial, Alexander testified and continued with his fabrication of probable cause. The jury acquitted Ewell of disorderly conduct and resisting an officer without violence charges and the state dismissed the trespass charge.

23. As a result of Alexander's conduct, Ewell suffered damages. These damages included but not limited to emotional, physical, and financial injury. Ewell suffered humiliation and embarrassment as result of this incident. Additionally, Ewell incurred unnecessary legal costs as a result of the defense of the criminal matter.

24. Defendant acted under color of statute, ordinance, regulation, custom, or usage, of Broward and/or the State of Florida.

**Claim 1: Unreasonable Seizure against Alexander**

25. This action is brought pursuant to 42 USC §1983 in violation of Plaintiff's right to be free of an unreasonable seizure as provided in the Fourth Amendment of the United States Constitution and applied to the states under the Fourteenth Amendment.

26. Ewell was subject to an unlawful stop and arrest by Defendant.


600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

27. Defendant did not have reasonable suspicion or probable cause to seize Ewell. Ewell was the victim of a battery and was waiting for medical assistance on a public sidewalk. He posed no threat to anyone including the officers on the scene. There was no evidence to suggests that Ewell committed a crime, was suspected of committing a crime, was in the process of committing a crime, or was going to commit a crime.

28. As a result of Defendant's unlawful and intentional conduct, Ewell's person was unreasonably seized. When Ewell saw he was not being assisted, he attempted to leave. Defendant tackled him to the ground, handcuff, subsequently confined him to a police car, and then imprisoned him.

29. Defendant acted under the color of law pursuant to the laws of Florida. Defendant was a municipally employed officer seizing Ewell pursuant to the laws of Florida.

### Claim 2: Excessive Force in violation of 42 USC §1983

30. This action is brought pursuant to 42 USC § 1983 and in violation of Ewell's right to be free of excessive force in the course of an arrest as prescribed by the Fourth Amendment of the United States Constitution and as applied to the states under the Fourteenth Amendment therein.

31. Pursuant to the Fourth Amendment, Ewell had the right to be free from excessive force during the course of a criminal apprehension. The force applied to Ewell was unreasonable under the circumstances. Ewell was the victim of a battery by a third party and was waiting for medical assistance on a public sidewalk. When Ewell saw he was not being assisted, he attempted to leave. Without provocation, Defendant applied a leg sweep and tackled Ewell to the ground. Ewell did not resist Defendant's unlawful detention and did not physically resist the arrest. Ewell did not flee or attempt to flee. Ewell did not threaten anyone and did not pose a threat to anyone. Defendant observed Ewell's non-resistance yet continued to use excessive force. The crimes he was charged for were minor.

32. Had Defendant not applied excessive force to Ewell when they clearly observed that he was not resisting, Ewell would not have endured injuries in violation of the Fourth Amendment.

33. Defendant acted under the color of law pursuant to the laws of Florida. Defendant was a municipally employed officer apprehending Ewell pursuant to the laws of Florida.

PIERRE SIMON
600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

### Claim 3: Fabrication of Arrest Affidavit against Alexander

34. This action is brought pursuant to 42 USC §1983 in violation of Plaintiff's right to be free of an unreasonable seizure of Plaintiff's person as stated in the Fourth Amendment of the United States Constitution and as applied to the states under the Fourteenth Amendment.

35. Alexander falsified the arrest affidavit that gave rise to the unlawful seizure.

36. Defendant did not have probable cause to arrest Ewell and fabricated the arrest affidavit to substantiate Ewell's arrest. In his arrest affidavit, Alexander stated that Ewell had been drunk on property, that he was unruly, was screaming profanity, was uncooperative with the investigation, and that Ewell trespassed on the property. This was false and there was nothing to corroborate this false statement. Ewell was peacefully waiting for medical assistance on a public sidewalk and the officers on scene refused to provide assistance. Alexander did not engage in any investigation, even though he was repeatedly informed of the incident via dispatch. Ewell did not trespass. As Ewell walked away, Alexander attacked him without provocation.

37. As a result of Defendant's unlawful and intentional conduct, Defendant's fabrication of probable cause led to his detention and subsequent imprisonment.

38. Defendant acted under the color of law pursuant to the laws of Florida. Defendant was a municipally employed officer arresting Ewell pursuant to the laws of Florida.

### Claim 4: False Imprisonment/False Arrest against Alexander (State Claim)

39. This action is brought pursuant to laws of Florida and alleges that Alexander falsely arrested and imprisoned Ewell. Ewell was subject to an unlawful detention and deprivation of liberty against his will. Ewell was detained for approximately one day in Broward County jail against his will.

40. The detention was unreasonable and not warranted by the circumstances. Based on the objective evidence known to Defendant at the time of Ewell's arrest, Defendant knew there was no probable cause to arrest Ewell for any offense under Florida law, because:

   a. Defendant knew Ewell was a law-abiding patron at Capones.
   b. Defendant knew Ewell remained on a public sidewalk while waiting for paramedics to arrive as directed to do so by the 911 operator.



600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

  c. Defendant knew that Ewell was not disorderly and attempted to seek assistance from the officers on the scene – which they refused to provide.

41. The detention was intentional. Defendant intended to cause the unlawful detention and deprive Ewell of his liberty by falsely arresting Ewell and fabricating probable cause. Moreover, Defendant's actions were done with bad faith, malicious purpose, or with willful, wanton, and deliberate indifference in regard to Ewell's rights, health and safety, thus merits an award of punitive damages against said Defendant.

**Claim 5: False Imprisonment/False Arrest against City of Fort Lauderdale (State Claim)**

42. This action is brought pursuant to laws of Florida and alleges that City of Fort Lauderdale falsely arrested Ewell. Ewell was subject to an unlawful detention and deprivation of liberty against his will. Ewell was detained for one day in Broward County jail against his will.

43. The detention was unreasonable and not warranted by the circumstances. Based on the objective evidence known to Defendant at the time of Ewell's arrest, Defendant knew there was no probable cause to arrest Ewell for any offense under Florida law, because:

  a. Defendant knew Ewell was a law-abiding patron at Capones.

  b. Defendant knew Ewell remained on a public sidewalk while waiting for paramedics to arrive as directed to do so by the 911 operator.

  c. Defendant knew that Ewell was not disorderly and attempted to seek assistance from the officers on the scene – which they refused to provide.

44. The detention was intentional. Defendant intended to cause the unlawful detention and deprive Ewell of his liberty by falsely arresting Ewell and fabricating probable cause.

**Claim 6: Excessive Force against Alexander (State Law)**

45. This action is brought pursuant to laws of Florida and alleges that Paul Alexander applied excessive force upon Ewell's person. Ewell was battered by Defendant when Alexander attacked him without provocation. The force applied was not reasonable under circumstances.

46. Ewell was the subject of a harmful and offensive contact by said Defendant. Ewell suffered repeated blows, brief loss of consciousness, and trauma to his body as a result of Defendant's contact.

47. Defendant intended to cause the harmful and offensive contact with Ewell's person by leg sweeping and then tackling Ewell even though it was clear that Ewell was

nonthreatening and not resisting. Moreover, Alexander's actions were done with bad faith, malicious purpose, or with willful, wanton, and deliberate indifference in regard to Ewell's rights, health and safety, thus merits an award of punitive damages against said Defendant.

48. Defendant's conduct caused a harmful and excessive application of force on Ewell's person. No harmful or excessive force would have occurred if it were not for the leg sweep and the tackling Ewell to the ground until he briefly loss consciousness.

### Claim 7: Excessive Force against City of Fort Lauderdale

49. This action is brought pursuant to laws of Florida and alleges that City of Fort Lauderdale applied excessive force upon Ewell's person. Ewell was battered by Defendant when it attacked him without provocation. The force applied was not reasonable under circumstances.

50. Ewell was the subject of a harmful and offensive contact by said Defendants. Ewell suffered repeated blows, brief loss of consciousness, and trauma to his body as a result of Defendant's contact.

51. Defendant intended to cause the harmful and offensive contact with Ewell's person by leg sweeping and then tackling him to submission even though it was clear that Ewell was nonthreatening and not resisting.

52. Defendant's conduct caused a harmful and excessive application of force on Ewell's person. No harmful or excessive force would have occurred if it were not for the leg sweep and the tackling Ewell to the ground until he briefly loss consciousness.

53. Ewell did not consent to the harmful and excessive application force by said Defendant.

### Claim 8: Malicious Prosecution against Alexander

54. This action is brought pursuant to the laws of Florida against Alexander.

55. A criminal proceeding in the Circuit Court of Broward County, Florida was commenced against Ewell. The person responsible for the initiation of the criminal proceeding was Alexander.

56. The criminal proceeding ended in a not guilty verdict in favor of Ewell.

57. There was an absence of probable cause for the original proceeding. At the time of the original proceeding, Defendant did not have probable cause to arrest or prosecute Ewell for any of the charges. Specifically, Alexander was not involved in the execution of a legal duty.



PIERRE SIMON

600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

Alexander did not observe disorderly conduct, resisting an officer without violence, or trespass by Ewell. Ewell was peacefully on a public sidewalk waiting for paramedics.

58.     There was malice on the part of the Defendant because when he arrested Ewell, Alexander knew there was not a scintilla of probable cause to support the arrest and the continued prosecution. Alexander fabricated probable cause. Alexander was the driving force of the criminal proceeding against Ewell as there was no other basis for the prosecution of the matter.

59.     Ewell suffered damages as a result of the criminal proceeding. These damages include but not limited to emotional, physical, and financial injury. Ewell suffered humiliation and embarrassment as result of this incident. Additionally, Ewell incurred unnecessary legal costs as a result of the defense of this matter.

## PRAYER

Wherefore, Anthony Ewell, demands the following relief against Defendants:

a. Compensatory general and special damages in an amount in accordance with proof;
b. Consequential damages;
c. Exemplary damages, against Defendant, for intentional acts described above or for those done negligently or recklessly or with deliberate indifference, in an amount sufficient to deter the conduct of said defendant;
d. Reasonable attorneys' fees and expenses of litigation, including those fees permitted by 42 U.S.C. § 1988;
e. Prejudgment and post-judgment interests where permitted by law,
f. Punitive damages;
g. Nominal damages;
h. Costs of suit and interest accrued incurred herein; and
i. Other forms equitable and/or legal relief the Court deems just or proper.

Respectfully submitted by,
PIERRE SIMON
Attorneys for Plaintiff
600 Southwest 4th Avenue,
Fort Lauderdale, Florida 33315



600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

By: s/ Faudlin Pierre
Faudlin Pierre, Esq.
FBN. 56770
fplaw08@yahoo.com
(305) 336-9193

PIERRE **SIMON**

600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**